UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**MICHAEL D. BILLINGS and MDB GROUP, LLC; TERRY WAYNE KELLY, JR. and KELLY MANAGEMENT, LLC; and WILLIAM B. MCHENRY, JR. and FIRST SOUTH INVESTMENTS, LLC,**<br><br>Defendants | Case No. 3:18-cv-679-CWR-FKB<br><br>Arising out of Case No. 3:18-cv-252, *Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC*<br><br>Hon. Carlton Reeves, District Judge<br>Hon. F. Keith Ball, Magistrate Judge |

**MEMORANDUM BRIEF OF DEFENDANTS MICHAEL BILLINGS AND MDB GROUP, LLC IN OPPOSITION TO RECEIVER'S MOTION FOR PRELIMINARY INJUNCTION**

Michael D. Billings and MDB Group, LLC (collectively, "Mr. Billings") submit this Memorandum Brief in support of their Response **[Dkt. 28]** in opposition to the Motion for Preliminary Injunction (the "Motion") **[Dkt. 16]** filed by Alysson Mills (the "Receiver"), in her capacity as Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC.

**BACKGROUND**

As of the date of this filing, more than four months have passed since the Receiver was appointed by this Court. It has been over six months since the news reports first circulated regarding the government's investigation of Madison Timber Properties, LLC

("MTP") and corresponding criminal charges were brought against Lamar Adams ("Adams"). Mr. Billings has attempted to negotiate not only a resolution of the Receiver's claims, but also a monthly amount to which Mr. Billings should be entitled to pay for reasonable living expenses over the course of this lawsuit. Not only have these attempts been unsuccessful, they have, for the most part, been ignored. Or, as counsel for the Receiver put it while on his way to New Mexico most recently, "Let's let the court decide that."

The time frames are important. The Receiver's Motion asserts without evidence that Mr. Billings will dissipate his assets because of the lawsuit she has filed against him—that "[t]here is a substantial threat of irreparable injury if the Court does not grant this motion."[1] But, if such a threat was actually present, why has the Receiver waited so long to ask the Court to step in and prevent Mr. Billings from dissipating assets? Conversely, if this perceived threat has only just arisen in the past two weeks, what evidence of dissipation is the Receiver relying upon to make her assertion? And most importantly, if Mr. Billings is such a threat to the Receiver's recovery, why has he directed his counsel to make so many unsolicited attempts to contact the Receiver and discuss resolution of this case?

The Receiver's affidavit in support on her Motion [Dkt. 16-1] provides no evidence of a threat of dissipation. The Receiver swears only that she has reviewed the checking account statements of Defendant MDB Group, LLC, presumably the bank records voluntarily provided by Mr. Billings to the government on May 14, 2018. The Receiver does not know what Mr. Billings owns, what he owes, his monthly expenses, nor does she know which and to what extent any of his assets are traceable to commissions received from MTP

---

[1] Receiver's Memorandum Brief [Dkt. 17] at pg. 15.

and which of his assets are not. Instead, the Receiver offers evidence [Dkts. 16-1, 16-2] of a number—$3,513,780—representing what she says are the total payments made to Mr. Billings by MTP, to justify her vague request of a general injunction as to the "assets in [Mr. Billings's] possession that belong to the receivership estate."

The Receiver's contrived concern about asset dissipation is unfounded, and undermined by her own actions and delay since her appointment back in June. Mr. Billings has not dissipated assets throughout the course of these proceedings to date, and will not. He does have to pay his monthly living expenses, maintenance costs and litigation costs, however. The Receiver should not be allowed to cut Mr. Billings off from his assets through an unncessary preliminary injunction as a means of coercing him into a distressed settlement.

## STANDARD

"A preliminary injunction is an extraordinary remedy that should only issue if the movant establishes: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). "We have cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Bluefield Water Ass'n Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009) (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003).

# ANALYSIS

The Receiver asserts to the Court that she is entitled to a broad, pre-judgment attachment of Mr. Billings's assets. The law, however, supports no such conclusion.

**1. The Receiver has not shown that she is substantially likely to succeed at trial.**

Mr. Billings does not take issue with the generalized propositions of law quoted in the Receiver's Motion. The law is the law. But the Receiver's broad conclusions drawn from the cases are not the law.

It is true that the Fifth Circuit has held: "[T]ransfers made from a Ponzi scheme are presumptively made with the intent to defraud, because a Ponzi scheme, is, as a matter of law, insolvent from inception." *Quill v. Schonsky*, 247 Fed. App'x 583, 586 (5th Cir. 2007). But this "intent to defraud" language is not directed to the mindset of Mr. Billings—it instead speaks to the intent of the person perpetuating the Ponzi sheme, Lamar Adams.

The Receiver's application of the cases she cites misses the mark in several respects, beginning with her conclusion that she is entitled to injunctive relief because Mr. Billings "ha[s] no defense to liability"[2] in this case. This is just a misstatement of the law and the facts, particularly given that a similar question is set for a two week trial in April, 2019 in another case in the Fifth Circuit.[3]

For example, the *Warfield v. Byron* case cited by the Receiver does not conclusively state that Mr. Billings's defense fails as a matter of law. The substantial value and good faith defense failed for Johnson, the defendant in *Warfield*, under the facts of the RDI Ponzi

---

[2] Receiver's Memorandum Brief, Dkt. 17 at pg. 11.
[3] *Janvey v. Alguire, et al.*, Case No. 3:09-cv-00724 (N.D. Tex.) [Dkt. 2649, para. 4].

scheme addressed in that case, and the Fifth Circuit expressly said so rather than offering what the Receiver cites here as *per se* authority. The Receiver seems unconcerned with how different the facts in the cases she cites are from the facts as to Mr. Billings, so she asks this Court to hold Mr. Billings to generalized standards not intended to apply in a case like this. Indeed, a close review of the *Warfield* case shows exactly why facts matter, and why Johnson, in that case, was unsuccessful in one of the defenses raised by Mr. Billings here.

In the mid-1990s, Johnson successfully invested in several companies run by the the Edwards brothers. *Warfield v. Byron*, 436 F.3d 551, 555 (5th Cir. 2006). About that time, the Edwards brothers approached Johnson about investing in one of their new companies, PILP, which Johnson understood operated in conjunction with two other companies, Dennel and Cook. *Id.* In 1999, the SEC shut down Dennel and Cook for operating as a Ponzi scheme. *Id.* After those companies were adjudicated as a Ponzi scheme, the Edwards brothers began to promote PILP and another company, RDI, as independent investments. *Id.* But *before* Johnson's involvment with RDI, he knew that:

> "(1) The SEC placed Dennel in receivership; (2) RDI was offered by the same people who had operated PILP through Dennel; (3) RDI's contracts were nearly identical to the illegal Dennel and PILP contracts; (4) each RDI participant was required to open an offshore account for receipt of all commission transfers; and (5) RDI was under investigation by the SEC.
>
> Despite the warning signs, Johnson continued to invest in RDI and began to recruit other investors, activities for which he received substantial payments from RDI."
>
> *Id.*

The district court found for the receiver on those facts, and the Fifth Circuit affirmed, noting: "It takes cheek to contend that in exchange for the payments he received, the RDI Ponzi scheme benefitted from [Johnson's] efforts to extend the fraud by securing new

investments. . . . **The evidence in this case demonstrated that RDI did not receive reasonably equivalent value from Johnson, and Johnson failed to raise any genuine issue of material fact demonstrating otherwise**." *Id.* at 560 (emphasis added).

But the case before this Court is not like *Warfield*. And Mr. Billings is nothing like Johnson. From the beginning of 2012 and until Adams was charged with wire and bank fraud on May 1, 2018, Mr. Billings always acted in good faith and provided reasonably equivalent value in exchange for his services to MTP and Adams. At no point did Mr. Billings notice or know of any wrongdoing or any warning signs of wrongdoing on the part of Adams or MTP. To the contrary, each representation made by Adams appeared to be backed by objective factors of legitimacy and the routine fulfillment of the terms of each of MTP's loans, all the way up to the day Adams was charged with a crime.

Depsite the Receiver's refusal to acknowledge the point, this case contains several triable issues, all of which are fact intensive, and none of which can be determined as a matter of law. Adams's admission to operating MTP as a Ponzi scheme while pleading guilty to wire fraud is not conclusive proof that the Receiver wins and Mr. Billings loses. No case cited by the Receiver affords her such a presumption. Allegations about the time-period of the Ponzi scheme vary widely even among government officials, and even as recently as the sentencing hearing for Adams. Mr. Billings has the right to develop his legal defense, including a cross-examination of Adams's admissions and a demonstration of which transactions may be proven to have been legitimate and when, which is why the need for discovery, including depositions and document production and review, should not be cut off by the Court.

Further, throughout her Motion, the Receiver tries to prop herself up on the *Janvey v. Alguire* case. *Janvey* is an ongoing case in a sister district within the Fifth Circuit that involves claims with facts similar to those before the Court. But *Janvey* does not support the Receiver's generalized request for a sweeping injunction against Mr. Billings's use of his assets to live on.

In *Janvey*, the scope of the preliminary injunction was limited only to certain accounts that originated through the bad actor, the Stanford Group Company ("SGC")[4]—here, that would mean accounts held with MTP. The SGC accounts subject to the preliminary injunction were frozen at the same time that the receiver was appointed by the court.[5] In fact, the frozen SGC accounts did not contain broker commissions only, and many of the Stanford investors also had money tied up in the SGC accounts that were frozen.[6] The trial court record in *Janvey* shows that the frozen SGC accounts included employee IRAs and brokerage accounts that were held and maintained through SGC.[7]

The distinctions between the *Janvey* preliminary injunction and the one requested by the Receiver should guide the Court's decision on the Motion here. In *Janvey*, the district court granted a preliminary injunction as to specific retirement and brokerage accounts that were maintained by SGC and were already frozen by virtue of the government's investigation of SGC.[8] But the *Janvey* preliminary injunction *did not* apply to the personal assets or individual bank accounts of the employee defendants that received commissions from SGC.

---

[4] *Janvey*, Case No. 3:09-cv-00724 (N.D. Tex.) at [Dkt. 392, pg. 8].
[5] *Id*. at [Dkt. 456, pg. 3].
[6] *Id*. at [Dkt. 456, pg.3].
[7] *Id*. at [Dkts. 392 and 393, Ex. 2].
[8] *Id.* at [Dkt. 456].

Conversely, in our case, the Receiver does not seek to continue an existing freeze on MTP accounts, nor does she make any specific showings as to which assets the Receiver seeks to enjoin. The Receiver simply asks the Court to cast a broad net over Mr. Billings's personal property in the name of *Janvey*, in the hope that MTP commissions spoil it all in her favor.

## 2. There exists no threat of irreparable harm if the Motion is denied.

As the Receiver noted in her Motion, an injury that can be compensated with a money judgment is not generally irreparable under Fifth Circuit law. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975).

To get around the *Deerfield* and *Morgan* cases, the Receiver cites to *Productos Carnic, S.S. v. Central Am. Beef and Seafood Trading Co.*, 621 F.2d 683 (5th Cir. 1980) for the conclusion that the "rules change where 'any judgment ultimately obtained . . . would be unenforcable."[9] *Productos Carnic* is not nearly as generous to her position as the Receiver hopes, though.

In that case, the Fifth Circuit affirmed a district court's injunction in a case seeking money damages, where "essentially uncontradicted evidence support[ed] the District Court's

---

[9] Dkt. 17 at pg. 14 (citing Productos Carnic, S.S. v. Central Am. Beef and Seafood Trading Co., 621 F.2d 683, 696 (5th Cir. 1980).

determination that without an injunction a meaningful decision on the merits would be impossible." *Id.* at 686.  The untracondicted evidence there showed that the defendants intended to transfer their assets out of the jurisdiction of the court, and that they had once previously attempted to transfer their assets to a fictitious trading company and to alter documents to frustrate any judgment the plaintiff received on the merits.  *Id.*

Unlike the defendants in *Productos Carnic*, Mr. Billings only wishes to pay his monthly living expenses, maintain his property, and be able to pay his legal expenses while defending the Receiver's claims.  Mr. Billings has no intention of dissipating his assets to frustrate the Receiver.  Her unfounded fears to the contrary are not grounded in fact. The Receiver's favorite case, *Janvey v. Alguire*, cited the *Productos Carnic* case, too, but then noted that "a showing of '[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'" *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (internal citations ommitted).

"Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Aon Re, Inc. v. TIG Insurance Co.*, 2009 WL 3075584 at *4, No. 3:09-cv-0300 (N.D. Tex. Sept. 28, 2009) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)).  "Although the court's denial of this TRO may force [plaintiff] to wait and spend more time and energy in order to satisfy her judgment, the Fifth Circuit has held that such inconveniences do not constitute irreparable harm. In short, even if, as [plaintiff] fears, [defendant] whisks the settlement money away so that she cannot reach it, the harm to her will be purely pecuniary." *Rotella v. Mid-Continent Cas. Co.*, 2009 WL 1287834 (N.D. Tex. May 08, 2009).

The Receiver's conclusory claim that she will suffer irreparable harm is too speculative to meet her burden of actually showing a likelihood of irreparable injury. The evidence does not support an injunction—in fact, the vague, general evidence actually contradicts her position. And the Fifth Circuit's rule against the availability of injunctive relief for those seeking money judgments should be applied to deny the Motion.

### 3. The harm of the injunction far outweighs the Receiver's threatened injury

Mr. Billings is the only party that can be harmed by the outcome of the Motion. Enjoining Mr. Billings from paying his monthly living and maintenance expenses would create an unjust hardship on Mr. Billings. As noted above, Mr. Billings has not dissipated assets during the course of these proceedings. Mr. Billings plans to pay his monthly living and maintenance expenses, which is not against the law and is not against the equities while he is defending himself against the Receiver's lawsuit, even in the context of a Ponzi scheme perpetrated by someone else.

Under circumstances such as these, the injunction's harm to Mr. Billings strongly outweighs the perceived need for an injunction by the Receiver.

### 4. An injunction against Mr. Billings will not satisfy the public interest

It is only Mr. Billings, and not public interest, that will be harmed by the Court granting the Receiver with a preliminary junction. This is not a criminal case. This is not even a case of civil forfeiture, as much as it appears the Receiver would like it to be. This is a civil lawsuit, and the public interest is not served by freezing Mr. Billings's assets.

## CONCLUSION

The Receiver has made no showing that entitles her to the harsh relief requested in her Motion. For these reasons and those to be presented at the hearing on this matter, the Receiver's Motion should be denied.

Respectfully submitted, this the 31st day of October, 2018.

                                        **MICHAEL D. BILLINGS** and **MDB GROUP, LLC**
                                        *Defendants*

                                  By: /s/ *R. Andrew Taggart, Jr.*
                                        R. ANDREW TAGGART, JR. (MSB# 7422)

                                        /s/ *David G. Porter*
                                        DAVID G. PORTER (MSB# 104828)

**OF COUNSEL:**

R. Andrew Taggart, Jr. (MSB# 7422)
David G. Porter (MSB# 104828)
TAGGART, RIMES & GRAHAM, PLLC
1022 Highland Colony Parkway, Suite 101
Ridgeland, Mississippi 39157
Telephone: (601) 898-8400
Facsimile: (601) 898-8420
andy@trglawyers.com
dave@trglawyers.com

\

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2018 I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all attorneys of record in this matter. I further certify that I have mailed by United States Postal Service the document to the following non-ECF participants: NONE.

SO CERTIFIED, this the 31st day of October, 2018.

/s/ *R. Andrew Taggart, Jr.*
R. ANDREW TAGGART, JR.