# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ALYSSON MILLS,** *in her Capacity as*  **PLAINTIFF**
*Receiver for Arthur Lamar Adams and*
*Madison Timber Properties, LLC*

**V.**  **CAUSE NO. 3:18-CV-679-CWR-FKB**

**MICHAEL D. BILLINGS and MDB**  **DEFENDANTS**
**GROUP, LLC; TERRY WAYNE KELLY,**
**JR. and KELLY MANAGEMENT, LLC;**
**and WILLIAM B. MCHENRY, JR. and**
**FIRST SOUTH INVESTMENTS, LLC**

## ORDER

Before the Court is the Receiver's motion for summary judgment on the fraudulent transfer claim (Count I) against Defendants William B. McHenry, Jr. and First South Investments, LLC.[1] After considering the record evidence, briefing, and applicable law, the motion will be granted.

The relevant facts can be summarized quite succinctly. McHenry and his company, First South, received $3,473,320 in commissions from 2010 to April 2018 in exchange for recruiting new investors to Madison Timber, a Ponzi scheme operated by Arthur Lamar Adams. Because these commissions were proceeds of a Ponzi scheme, the Receiver alleges that they were fraudulent transfers irrespective of McHenry's good or bad faith.

---

[1] On December 21, 2018, the Court approved a settlement and consent judgment with Defendant Terry Kelly, Jr. and Kelly Management, LLC. *See* Docket No. 56. Today, on August 16, 2019, the Court did the same with Defendant Michael D. Billings and MDB Group, LLC. *See* Docket No. 61. Thus, Billings' pending motion to dismiss Count IV of the Complaint, Docket No. 23, is moot.

The familiar summary judgment standard applies. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law.").

Adams explained the operations of Madison Timber during his sentencing hearing. It operated as a classic Ponzi scheme from 2009 to 2018, using money from new investors to pay amounts due on preexisting notes. The Receiver confirmed that all of Madison Timber's income came from defrauded investors. *See* Docket No. 31-1. Madison Timber never had legitimate operations or income. The Receiver and J. Lester Alexander, III (a forensic accountant and Certified Fraud Examiner) also confirmed that First South's primary or sole source of income was commissions from Madison Timber. *See* Docket Nos. 31-1, 31-2.

Mississippi's Uniform Fraudulent Transfer Act ("MUFTA") makes voidable any transfers made with "actual intent to hinder, delay or defraud any creditor." Miss. Code Ann. § 15-3-107(1). Madison Timber's operation as a Ponzi scheme is sufficient to establish the fraudulent intent behind any transfers it made. *See Janvey v. Alguire*, 647 F.3d 585, 598 (5th Cir. 2011); *Quilling v. Schonsky*, 247 F. App'x 583, 586 (5th Cir. 2007) ("[T]ransfers made from a Ponzi scheme are presumptively made with intent to defraud, because a Ponzi scheme is, as a matter of law, insolvent from inception."). McHenry's "knowing participation is irrelevant . . . for purposes of establishing the premise . . . for a fraudulent transfer." *Janvey*, 647 F.3d at 598 (citations omitted).

McHenry's commissions are not voidable, however, under MUFTA if he proves he "took in good faith *and* for a reasonably equivalent value." Miss. Code Ann. § 15-3-113(1). But McHenry does not qualify for this exception. The Fifth Circuit has held that a recruiter who

2

induces new investors to invest in a Ponzi scheme cannot, as a matter of law, provide reasonably equivalent value in exchange for commissions.

> The primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved. It takes cheek to contend that in exchange for the payments he received, the RDI Ponzi scheme benefited from his efforts to extend the fraud by securing new investments.

*Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006) (citations omitted). McHenry spends some time describing why the Mississippi Supreme Court would not necessarily follow this Fifth Circuit precedent—essentially because the Fifth Circuit was not analyzing Mississippi law. Nevertheless, he concedes that he cannot, as a matter of law, establish a reasonable equivalent value defense. *See* Docket No. 57 at ¶ 8 ("Without the benefit of a definitive decision from the Mississippi Supreme Court, the current Fifth Circuit law appears to establish a Ponzi scheme presumption of insolvency for which there can be no reasonable equivalent value defense"). McHenry's services furthered the Madison Timber Ponzi scheme, so the services could not have been for reasonably equivalent value.[2]

McHenry's remaining argument against the motion focuses on the change in Madison Timber's corporate name in 2012. In August 2012, Madison Timber Company, Inc. changed its name to Madison Timber Properties, LLC. The Receivership Estate does not include the former. Thus, McHenry contends that the Receiver should not be able to avoid commission payments he received from Madison Timber Company, Inc., a non-receivership entity, from 2010 to August 2012.[3] McHenry further argues that "[e]ven if the Court disregards the different entity, there has

---

[2] The Court need not draw a conclusion on good faith, as McHenry's defense would still fail as a matter of law because he did not receive commissions from Madison Timber in exchange for reasonably equivalent value.

[3] Prior to the name change, McHenry purports that First South received a total of $393,570 in commissions, including $10,000 received on August 17, 2012, from Adams. McHenry argues that these amounts are not subject to the Ponzi scheme presumption. *See* Docket No. 57 at ¶ 7. In the alternative, McHenry states that if the Court accepts Adams' statement at his sentencing that the Ponzi scheme started in 2011, that does not cover 2010. He alleges First South received a total of $108,470 from Adams in 2010.

been no showing nor confession by Adams of insolvency by Madison Timber Company, Inc. in 2010" and that there is a factual dispute regarding Adams' solvency during this earlier time period. *Id*. at ¶ 4.

Notably, McHenry does not dispute that all of the payments originated from Adams. *Id*. at ¶ 7. The Receivership Estate includes Adams. Adams formed and was the sole owner of Madison Timber Fund, LLC (formed in 2009), Madison Timber Company, Inc. (formed in 2011)[4], and Madison Timber Properties, LLC (formed in 2012). The Madison Timber Ponzi scheme never changed through all of these name changes. As made clear by the declarations and during Adams' sentencing testimony, each Madison Timber entity received its revenue from defrauded investors. McHenry's commissions from each entity were proceeds of the Ponzi scheme. The Court finds no actual controversy here as to the fraudulent source of McHenry's commissions. As such, summary judgment is granted against McHenry and First South Investments, LLC in the amount of $3,473,320. A Final Judgment shall issue.[5]

**SO ORDERED**, this the 16th day of August, 2019.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE

---

[4] The Court uses the name "Madison Timber Company, Inc." because the parties do so in their briefings. But, according to the Bill of Information in Adams' criminal case, it was called "Madison Timber, LLC." *See* Docket No. 1, *United States v. Adams*, No. 3:18-CR-88-CWR-LRA-1 (S.D. Miss. 2018). There is no mention of "Madison Timber Company, Inc.' in the Information.

[5] The remaining charges in the Complaint are either asserted in the alternative of the fraudulent transfer claim or against a dismissed party.